**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>    FRANK J. CATRONA, JR.,<br><br>    *Debtor* | Case No.: 25-30539 (AMN)<br>Chapter 7 |
| ANDREA O'CONNOR, CHAPTER 7 TRUSTEE,<br>    *Plaintiff*<br>v.<br><br>SHERRY A. CATRONA, as Trustee of the Sherry A. Catrona Revocable Truste Indenture;<br>SHERRY A. CATRONA, Individually;<br>FRANK J. CATRONA, as Trustee of the Sherry A. Catrona Revocable Trust Indenture;<br>9 WEST MAIN PROPERTIES, LLC;<br>THE MARTONE GROUP, LLC;<br>MARTONE BUILDING GROUP, LLC;<br>MARTONE CUSTOM HOMES, LLC; and<br>NORTHSTAR ENTERPRISES BG, LLC,<br><br>    *Defendants* | Adv. Pro. No. 25-03005 (AMN)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Re: AP-ECF Nos. 9, 25[1] |

**MEMORANDUM OF DECISION**
**AND AMENDED ORDER REGARDING MOTION TO DISMISS**

This memorandum of law explains and amends the Court's prior Order entered as

AP-ECF No. 25 on March 31, 2026, addressing the defendants' motion to dismiss the

Chapter 7 Trustee's complaint for lack of subject matter jurisdiction under Fed.R.Civ.P.

---

[1] "ECF No." refers to the document number on the court's electronic case filing docket for the Chapter 7 case, Case No. 23-30539. "AP-ECF No." refers to the document number on the court's electronic case filing docket for the adversary proceeding case, Adversary Proceeding No. 25-03005.

12(b)(1) and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).  AP-ECF No. 9 (the "Motion").  *See* Fed.R.Bankr.P. 7012(b)(1), (6).  Andrea O'Connor, in her capacity as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Frank J. Catrona, Jr. (the "Debtor"), initiated this adversary proceeding against several defendants, including Sherry A. Catrona in her individual capacity and as trustee and grantor of the Sherry A. Catrona Revocable Trust Indenture (the "Trust"); Frank J. Catrona, Jr. as co-trustee of the Trust; 9 West Main Properties, LLC ("9 West"); The Martone Group, LLC ("The Martone Group"); Martone Building Group, LLC ("Martone Building"); Martone Custom Homes, LLC ("Martone Custom Homes"); and NorthStar Enterprises BG, LLC ("NorthStar") (collectively, the "Defendants." The Martone Group, Martone Building, and Martone Custom Homes are the "Martone Defendants".).

For the reasons explained below, the Motion was granted in part and denied in part. The Court notes that the prior Order, AP-ECF No. 25, contained a scrivener's error by omitting Counts XI, XIV, and XX from the list of dismissed counts.  This amended Order corrects that error and clarifies that the Counts will be treated as indicated below.

Because courts "should freely give leave [to amend] when justice so requires," and because the complaint might be amended to identify the transfers sought to be avoided with the required specificity, leave was granted for the Trustee to file an amended complaint.  Fed.R.Civ.P. 15(a)(2); s*ee also APP Grp. (Can.) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, 2024 U.S. App. LEXIS 554, at *10-*11 (2d Cir. Jan. 9, 2024).  If an amended complaint is not timely filed, the counts identified for dismissal in this Order will be dismissed, and the surviving counts will stand.

Introduction

On July 26, 2024 (the "Petition Date"), the Debtor commenced the underlying bankruptcy case by filing a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  Case No. 25-30539.  According to the complaint, the Debtor serves as co-trustee alongside Sherry A. Catrona of the Sherry A. Catrona Revocable Trust Indenture (the "Trust"), which lists its place of business as 5 Laurelwood Drive, Wallingford, Connecticut (the "Residence"), where the Debtor and Sherry Catrona also reside.

The Trustee alleges the Debtor is the sole owner and manager of 9 West, a Vermont-based LLC, and the owner of Martone Custom Homes.  According to the Trustee, when referring to this entity, the Debtor interchangeably used the names Martone Custom Homes, Martone Group, and Martone Building.  The Trustee further claims the Debtor holds a 50% ownership interest in NorthStar, with Sherry Catrona possessing the remaining ownership interest in the business.

A.  The Trustee's Complaint

The Trustee filed a complaint commencing this proceeding on July 1, 2025.  AP-ECF No. 1.  The Court assumes the counts on pages 21 and 22 of the complaint—numbered as XIV and XV—were intended to be numbered as XVII and XIX, respectively, and will refer to them as such.  The complaint included 22 total counts.  The allegations and their disposition by the Court are summarized in the following chart:

| Count | Claims | Disposition |
|---|---|---|
| **Count I** | Claim seeking a declaratory judgment determining the extent that 9 West's assets constitute property of the bankruptcy estate. | DENIED |

| Count | Claims | Disposition |
|---|---|---|
| Count II | Claim seeking a declaratory judgment piercing the corporate veil and determining 9 West is the Debtor's alter ego. | DENIED |
| Count III | Claim seeking a declaratory judgment determining the extent that the Trust's assets are property of the bankruptcy estate. | DENIED |
| Count IV | Claim seeking a declaratory judgment piercing the corporate veil and determining the Trust is the Debtor's alter ego. | DENIED |
| Count V | Claim seeking a declaratory judgment determining the extent that the Martone Defendants' assets are property of the bankruptcy estate. | DENIED |
| Count VI | Claim seeking a declaratory judgment piercing the corporate veil and determining the Martone Defendants are the Debtor's alter ego. | DENIED |
| Count VII | Claim seeking a declaratory judgment determining the extent that assets of NorthStar are property of the bankruptcy estate. | DENIED |
| Count VIII | Claim seeking a declaratory judgment piercing the corporate veil and determining NorthStar is the Debtor's alter ego. | DENIED |
| Count IX | Claim seeking a declaratory judgment substantively consolidating the Debtor, 9 West, the Trust, the Martone Defendants, and NorthStar, and holding them jointly liable. | GRANTED pursuant to Fed.R.Civ.P. 8 |
| Count X | Claim for fraudulent transfer pursuant to 11 U.S.C. §§ 544, 548, 550 and in violation of Conn. Gen. Stat. 52-552e(a)(1). | GRANTED pursuant to Fed.R.Civ.P. 9(b) |
| Count XI | Claim for actual fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552b(3) and VT S. T. 9 § 2288(a)(1). | GRANTED pursuant to Fed.R.Civ.P. 9(b) |
| Count XII | Claim for constructive fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552e(a)(2) or VT. Stat. T. 9, § 2288(a)(2). | GRANTED pursuant to Fed.R.Civ.P. 8 |
| Count XIII | Claim for constructive fraudulent transfer pursuant to Conn. Gen. Stat. § 52-552h(a) and VT. Stat. T. 9, § 2291(a). | GRANTED pursuant to Fed.R.Civ.P. 8 |
| Count XIV | Claim for actual fraud pursuant to Conn. Gen. Stat. § 52-552h(a), VT. Stat. T. 9, § 2291(a), or Tex. Bus. & Com. Code. § 24.008(a). | GRANTED pursuant to Fed.R.Civ.P. 9(b) |
| Count XV | Claim for constructive fraud pursuant to Conn. Gen. Stat. 52-552e(a)(2), VT. Stat. T. 9, § 2288(a)(2), and Tex. Bus. & Com. Code. § 24.005(a)(2). | GRANTED pursuant to Fed.R.Civ.P. 8 |

| Count | Claims | Disposition |
|---|---|---|
| Count XVI | Claim for constructive fraud pursuant to Conn. Gen. Stat. § 52-552f(a), VT. Stat. T. 9, § 2289(a), or Tex. Bus. & Com. Code. § 24.006(a). | GRANTED pursuant to Fed.R.Civ.P. 8 |
| Count XVII | Claim for actual fraud pursuant to Conn. Gen. Stat. § 52-552e(a)(1), VT. Stat. T. 9, § 2288(a)(1), or Fla. Sta. § 726.105(1)(a). | GRANTED pursuant to Fed.R.Civ.P. 9(b) |
| Count XVIII (Numbered as Count XIV p. 21) | Claim for constructive fraud pursuant to Conn. Gen. Stat. § 52-552e(a)(2), VT. Stat. T. 9, § 2288(a)(2), Fla. Stat. § 726.105(1)(b). | GRANTED pursuant to Fed.R.Civ.P. 8 |
| Count XIX (Numbered as Count XV p.22) | Claim for constructive fraud pursuant to Conn. Gen. Stat. § 52-552f(a), VT. Stat. T. 9, § 2289(a), Fla. Stat. § 726.106(1). | GRANTED pursuant to Fed.R.Civ.P. 8 |
| Count XX | Claim for actual fraud pursuant to Conn. Gen. Stat. § 52-552e(a)(1) or VT. Stat. T. 9, § 2288(a)(1). | GRANTED pursuant to Fed.R.Civ.P. 9(b) |
| Count XXI | Claim for constructive fraud pursuant to Conn. Gen. Stat. § 52-552e(a)(2) or VT Stat. T. 9, § 2288(a)(2). | DENIED |
| Count XXII | Claim for constructive fraud pursuant to Conn. Gen. Stat. § 52-552f(a) or VT Stat. T. 9, § 2289(a). | GRANTED pursuant to Fed.R.Civ.P. 8 |

## Jurisdiction and Venue

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984. This adversary proceeding is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A) (administration of the estate), (E) (turnover), (H) (determine, avoid, or recover fraudulent transfers), and the parties have filed statements consenting to the Court's entry of a final judgment. AP-ECF Nos. 24, 27. This adversary proceeding is governed by Federal Rules of Bankruptcy Procedure Rule 7001, *et seq*. Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>Burdens of Proof and Applicable Law</u>

A.  Standing

It is well-settled that a bankruptcy trustee may bring claims founded both on the rights of the debtor and on certain rights of the debtor's creditors.  *HK Int'l Funds Invs. (USA) Ltd., LLC v. Despins (In re Kwok)*, 2026 U.S. App. LEXIS 9809, 2026 WL 922975, at 3 (2d Cir. Apr. 6, 2026) (hereinafter the "2026 Kwok Decision").  To assert claims based upon a debtor's rights, trustees generally must invoke section 541 of the Bankruptcy Code,[2] which sweeps "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case" into the estate administered by the trustee.  *2026 Kwok Decision,* 2026 WL 922975 at 3; *Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90, 105 (2d Cir. 2024) (quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 740 F.3d 81, 88 (2d Cir. 2014)).  Trustees may also pursue the "rights of the debtor's creditors" by turning to other sections, including Bankruptcy Code § 544.  *2026 Kwok Decision*, 2026 WL 922975 at 3.  If property is found to be estate property, state law then governs whether such a claim then belongs to a debtor or creditor. *2026 Kwok Decision*, 2026 WL 922975 at 10 (*citing St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989)).

Section 544 grants a trustee authority to "assert any generalized claims that would belong to a hypothetical high-priority lien creditor."  *2026 Kwok Decision*, 2026 WL 922975 at 11.  A creditors' claim is a general one if it has "no particularized injury arising from it . . . [and] could be brought by any creditor of the debtor." *St. Paul Fire*, 884 F.2d at 700-01.  By contrast, personal creditors' claims, which creditors are exclusively

---

[2] Title 11 of the United States Code is the "Bankruptcy Code."

entitled to pursue, belong "only to specific sets of creditors harmed in particular ways." *2026 Kwok Decision*, 2026 WL 922975 at 14 (internal citations omitted).

Generalized alter ego claims may be asserted by a trustee under either Bankruptcy Code § 541 or § 544. *2026 Kwok Decision*, 2026 WL 922975 at 15 (*citing St. Paul Fire*, 884 F.2d at 700, 704); *Despins v. ACA Capital Grp. Ltd. (In re Kwok)*, 2025 Bankr. LEXIS 1000, 2025 WL 1185195 at *27 (Bankr. D. Conn. Apr. 23, 2025). Reverse veil-piercing claims, which seek to establish personal liability of corporate insiders for the entity's obligations, are considered generalized claims that a trustee can assert under § 544 as they "increase[e] the basket of assets that could be used to satisfy any and all liabilities owed by the debtor." *2026 Kwok Decision*, 2026 WL 922975 at 17 (*citing In re Nordlicht*, 115 F.4th at 108-09) (internal quotations omitted)).

B.  Motions to Dismiss

Rules 8, 9, and 12 of the Federal Rules of Civil Procedure govern motions to dismiss and apply to this adversary proceeding. *See* Fed.R.Bankr.P. 7008, 7009, and 7012(b).

i.      Fed.R.Civ.P. 8

Rule 8(a) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought," to "give the adverse party a fair notice of the claim asserted so as to enable [them] to answer and prepare for trial." Fed.R.Civ.P. 8(a)(2), (3).

ii.      Fed.R.Civ.P. 9(b)

Rule 8's requirements are less stringent compared to those imposed under Rule 9(b), which requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," though conditions related to an individual's

mindset or intent may be "alleged generally."  Fed.R.Civ.P. 9(b).  The Second Circuit applies Rule 9(b) to require that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

When alleging fraud by multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud" and "make specific and separate allegations against each defendant."  *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 573 F. Supp. 3d 671, 686 (D. Conn. Nov. 22, 2021) (emphasis in original) (internal citations omitted).

iii.     Fed.R.Civ.P. 12(b)(1)

The Defendants argue the Trustee lacks standing to assert Claims I through VIII, subjecting them to dismissal pursuant to Fed.R.Civ.P. 12(b)(1).  In support of this, they rely on the so-called *Wagoner* rule, derived from the Second Circuit's holding in a 1991 case, *Shearson Lehman Hutton, Inc. v. Wagoner*, which held that a trustee lacks standing to assert claims of creditors against third parties alleged to have aided the Debtor in defrauding creditors.  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).  Notably, the *Wagoner* Rule was recently clarified by the Second Circuit, which distinguished personal creditor claims—which *Wagoner* bars trustees from asserting—from general creditor claims—which trustees have standing to pursue under § 544.  *2026 Kwok Decision*, 2026 WL 922975, at 13-14.

Rule 12(b)(1) allows for dismissal for lack of subject matter jurisdiction if the reviewing court lacks the statutory or constitutional power to adjudicate the case.

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Under this, courts must accept the complaint's factual allegations as true and draw reasonable inferences in favor of the plaintiff.  *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).  The plaintiff bears the burden of proving subject matter jurisdiction exists by a preponderance of the evidence.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir 2000).  In this analysis, courts are not "limited to the allegations contained in the complaint" and may consider outside material to resolve disputed jurisdictional facts.  *Fausat Amoke Ongunbayo v. City of New York*, 2013 U.S. Dist. LEXIS 182820, 2103 WL 6920861, at *12-13 (E.D.N.Y. June 10, 2013); *Marakova*, 201 F.3d at 113.

iv.     Fed.R.Civ.P. 12(b)(6)

At this stage, the Court considers the factual allegations contained in the complaint as true.  "On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

The Court must "draw all reasonable inferences in the light most favorable" to the trustee, as the plaintiff. *Iqbal*, 556 U.S. at 675.  Though the Court must accept the facts asserted in the complaint as true, this analysis is still a "context-specific task that

requires . . . the court to draw on its judicial experience and common sense" in evaluating its plausibility. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Pleadings raising nothing more than a suspicion of a legally cognizable right of action or containing mere formulaic recitations of the elements of a cause of action are insufficient to survive a motion to dismiss. *Lynch v. City of N.Y.*, 952 F.3d 67, 74 (2d Cir. 2020); *Errato v. Am. Express Co.*, 646 F. Supp. 3d 402, 408 (D. Conn. 2022).

C. Requirements for a Complaint by a Trustee Seeking to Avoid Transfers Pursuant to 11 U.S.C. §§ 544, 548, and 550.

i.      Bankruptcy Code § 544 (Trustee as Lien Creditor)

Bankruptcy Code § 544 authorizes a trustee to use applicable state law to recover the proceeds of certain pre-petition avoided transfers for the bankruptcy estate. 11 U.S.C. §§ 544(b)(1); 550. Here, the Trustee seeks to avoid several transfers under the Connecticut Uniform Fraudulent Transfer Act ('CUFTA'), which creates state law causes action for actual and constructive fraudulent transfers. Conn. Gen. Stat. §§ 52-552a, *et seq*. Both CUFTA and § 548 empower the trustee to avoid intentional and constructive fraudulent transfers. Though CUFTA provides a four-year look back period, compared to the two-year period under § 548, "the standards for avoiding fraudulent transfers under the two statutes are not 'materially different'". *Katz v. Anderson (In re Anderson)*, 623 B.R. 199, 212 (Bankr. D. Conn. 2020) (quoting *In re Carrozzella & Richardson*, 302 B.R. 415, 419 (Bankr. D. Conn. 2003)).

The Trustee relies on both Conn. Gen. Stat. § 52-552e (actual fraudulent transfer) and Conn. Gen. Stat. § 52-552f (constructive fraudulent transfer) in her quest to avoid pre-petition transfers by the Defendants. She must prove the elements of these claims

by clear and convincing evidence. *In re Carrozzella & Richardson*, 302 B.R. at 419-20; *Coan v. Xin Chen (In re LXEng, LLCP)*, 607 B.R. 67, 88 (Bankr. D. Conn. 2019). Under CUFTA, claims of actual fraudulent transfer must meet the heightened pleading standard of Fed.R.Civ.P. 9(b), whereas claims of constructive fraudulent transfer are not subject to its heightened pleading standards.  *In re Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011).

ii.  Bankruptcy Code § 548 (Fraudulent Transfers)

Under 11 U.S.C. § 548, a trustee may avoid any transfer of a debtor's interest in property made up to two years before the petition date if the debtor did not receive a reasonably equivalent value for the exchange and was insolvent before or became insolvent because of the transfer.  11 U.S.C. § 548(a).

To survive a motion to dismiss, a complaint invoking § 548 must plausibly allege four elements. First, it must establish there was a transfer in a debtor's interest in property. Under the Bankruptcy Code, "transfer" is broadly construed to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." *In re Neri Bros. Construction Corp.*, 593 B.R. 100, 141 (2018) (quoting 11 U.S.C. § 548(a)(1)). Second, the transfer must have occurred within two years prior to the petition date.  Third, the debtor must have made the transfer voluntarily or involuntary.  Lastly, the transfer must have been made either with actual intent to hinder, delay, or defraud creditors under § 548(a)(1)(A), or the debtor received less than reasonably equivalent value in exchange for the transfer and was insolvent or undercapitalized pursuant to § 548(a)(1)(B).

To establish a constructive fraudulent transfer under § 548(a)(1)(B), proof of fraudulent intent is not required, but it must be shown that a debtor received less than reasonably equivalent value in exchange for the transfer and was insolvent at the time of the transfer, became insolvent as a result, was engaged in business with unreasonably small capital, or intended to incur debts beyond the debtor's ability to pay. 11 U.S.C. § § 548(a)(1)(B)(i), (ii).

In determining whether reasonably equivalent value was received in exchange for a transfer, the court must determine the value of the transferred property and of the consideration provided to the debtor at the time of conveyance.  This calculation need not be made with exact mathematical precision but must be conducted to support the equitable purpose of the statute, recognizing that a significant disparity between the value received and the property transferred causes significant harm to the bankruptcy estate's creditors.  *Kirschner v. Large S'holders (In re Tribute Co. Fraudulent Conveyance Litig.)*, 10 F.4th 147, 172 (2d Cir. 2021).  This requires an evaluation of the totality of the surrounding circumstances.  *Kirschner*, 10 F4th at 172.  "Equivalent value" is determined solely based on economic factors, and "emotional benefits" or "ephemeral, intangible, and psychological benefits" may not be considered.  *Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez)*, 342 B.R. 165, 169 (Bankr. S.D.N.Y. 2006) (internal citations omitted); 5 COLLIER ON BANKRUPTCY ¶ 548.05 (Richard Levin & Henry J. Sommers eds., 16th ed.).  The trustee bears the burden of proof to demonstrate lack of reasonably equivalent value by a preponderance of the evidence. *AYH Wind Down LLC v. Silberstein (In re All Year Holdings Ltd.)*, 2025 Bankr. LEXIS 367, 2025 WL

559695, at *48 (Bankr. S.D.N.Y. 2025) (quoting *Breeden v. L.I. Bridge Fund, LLC (In re Bennett Funding Grp., Inc.)*, 232 B.R. 565, 570 (Bankr. N.D.N.Y 1999)).

    iii.     Bankruptcy Code § 550

Section 550 provides that if a transfer is avoided under § 544 or § 548, the trustee may recover the property transferred, or its equivalent value, for the benefit of the bankruptcy estate.  The trustee may recover this from the initial transferee, the entity for whose benefit the transfer was made, or any immediate or mediate transferee. 11 U.S.C. §§ 550(a)(1), (2).

    D.  Required Specificity of Pleadings

Courts evaluating fraudulent transfers under Bankruptcy Code § 544 and § 548 must "focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether the transaction falls within the statutory parameters of either an intentional or constructive fraudulent conveyance." *In re Geltzer*, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013).  Intentional and constructive fraudulent transfers are subject to different pleading standards.

    i.     Actual or Intentional Fraudulent Transfers

Claims for actual or intentional fraudulent transfers are subject to heightened pleading standards under Fed.R.Civ.P. 9(b), which requires pleading both the circumstances of the fraud and a transferor's mental state.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).  Though allegations of fraudulent intent may be pled generally, they must still "give rise to strong inference of fraudulent intent." *Loreley Fin.*, 797 F.3d at 171 (internal quotations omitted).  To survive a motion to dismiss under 12(b)(6), the pleadings must allow for a reasonable

"inference of scienter." *Employee's Retirement Sys. Of Gov. of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015).  Pleadings must also contain a higher degree of specificity in identifying the transfers sought to be avoided and generally should identify "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer, and (3) the consideration paid with respect thereto." *In re Bernard L. Madoff Inv. Securities, LLC*, 458 B.R. 87, 106 (Bankr. S.D.N.Y. 2006) (quoting *Pereira v. Grecogas, Ltd., (In re Saba Enters. Inc.)*, 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009)).

ii.     Constructive Fraudulent Transfers

Claims for constructive fraudulent transfers are not subject to 9(b)'s particularity requirement and are instead "based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, rather than fraud." *Geltzer v. Barish (In re Geltzer)*, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013) (quoting *Official Comm. of Unsecured Creditors of Verestar, Inc. v. American Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 460 (Bankr. S.D.N.Y. 2006)).  Such claims need only satisfy Fed.R.Civ.P. 8(a)'s mandate to plead a "short and plain statement of the claim showing that [the trustee] is entitled to relief".  *Madoff*, 458 B.R. at 106.  Movants may make "allegations aggregating transfers into lump sums over several years without identifying the number of transfers, the dates of the transfers, or the amount of any specific transfer," but still requires specificity when identifying the transfer to be avoided and whether the trustee classifies it as a constructive or actual fraudulent one so that a defendant has "fair notice of what the [trustee's] complaint is and the facts upon which it rests."  *Madoff*, 458 B.R. at 113 (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 422

(S.D.N.Y. 2010)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Though it is unnecessary to allege every single detail of the transfer in question, a complaint must provide factual guideposts sufficient to give defendants fair notice of the claim itself. For example, in *Madoff*, allegations identifying a transfer of at least $7.3 million from investment accounts made after April 2004 and transfers between 2002 and 2008 to pay for personal expenses charged to the defendants' credit card were permitted, whereas attempts to avoid transfers identified only as salaries and bonuses between 2001 and 2008 and undated payments made to finance the defendants' ownership stake in other entities were not sufficiently specific. *Madoff*, 458 B.R. at 113-14.

E. Substantive Consolidation

When seeking substantive consolidation, a plaintiff must allege facts showing either: (i) the operational and financial affairs of the entities are so entangled that accurate identification and allocation of assets and liabilities cannot be achieved: or (ii) creditors dealt with the entities as a single economic unit and did not rely on their separate identities in extending credit.  *Gordon v. I.M.V. 1290 (In re Mina)*, 2022 Bankr. LEXIS 1887, 2022 WL 2657481, at *7 (Bankr. N.D.N.Y., July 8, 2022). The "sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors," though this should be "used sparingly" to avoid unfair treatment of creditors that dealt with a single party without knowing its relationship with the others.  *Chem. Bank New York Tr. Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966); *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988). When appropriate, courts may "substantively consolidate debtor and non-debtor entities." *In re Verestar*, 343 B.R. at 463.

Discussion

I.      Trustee Standing

The Defendants, relying on the now-clarified *Wagoner* Rule, assert that Counts I through VIII should be dismissed under Rule 12(b)(1), arguing the Trustee lacks standing to bring creditors' claims related to alter ego and equitable ownership. The Court disagrees. Trustees have standing to assert general claims of creditors. *2026 Kwok Decision*, 2026 WL 922975 at 11; *In re Kwok*, 674 B.R. 679, 699 (Bankr. D. Conn. June 17, 2025).  The *Wagoner* rule applies to trustees asserting personal creditor claims.  *2026 Kwok Decision*, 2026 WL 922975 at 14, n.5 (noting that "*Wagoner* did not involve or attempt to interpret section 544.").

Because the alter ego and equitable ownership claims here could be asserted by any hypothetical creditor, they are generalized and thus the Trustee has standing to assert them.  *2026 Kwok Decision*, 2026 WL 922975 at 15 ("[T]rustees may assert generalized alter-ego claims *either* under section 544 or—if those claims also belong to the estate itself—under section 541" (emphasis in original)).  Therefore, the request to dismiss Counts I through VIII for lack of standing was denied.

II.     Dismissal Under Fed.R.Civ.P. 8, 9, and 12

For the purposes of this Memorandum of Decision, the Court assumes as true the facts alleged in the complaint but does not give the same deference to conclusory statements involving the applicability of law to fact.  *See Iqbal*, 556 U.S. at 678–79.

Upon review of Counts XII, XIII, XV, XVI, XVIII, XIX, and XXII, the Court concludes they are insufficiently pled under Rule 8.  Each of these counts rely on formulaic recitations of statutory elements under § 548 unsupported by the factual

assertions necessary under Rule 8(a).  For example, Count XVI states that various transfers involving the Martone Defendants were constructive fraudulent transfers but does not identify transfers the Trustee seeks to avoid.  The Trustee does not provide details supporting the assertion that the Debtor did not receive reasonably equivalent value in exchange for the transfers, such as details on the fair market value of the transferred property or terms of the exchange.  Similarly, the complaint's bare assertion that the Debtor was insolvent at the time of the transfers (or became insolvent as a result) is unsupported by subordinate facts or other financial indicia.  Absent this, a showing of constructive fraud is not plausible under Rule 8(a), and as a result the Motion was granted as to these arguments against Counts XII, XIII, XV, XVI, XVIII, XIX, and XXII, with the Trustee granted leave to amend.

Under Rule 9(b)'s heightened pleading requirements, Counts X, XI, XIV, XVII and XX are also insufficiently pled because they fail to identify with the required specificity transfer dates or amounts, fail to provide support demonstrating insolvency, and do not offer support for the necessary finding of fraudulent intent.  The general allegations are devoid of specific transactional details, and do not provide fair notice or permit a reasonable inference of fraud consistent with Rule 9(b)'s requirements.  Therefore, the Motion was granted as to these arguments against Counts X, XI, XIV, XVII, and XX, with the Trustee granted leave to amend.

III.     Dismissal for improperly seeking *nunc pro tunc* relief

The Defendants' argument that Counts XII, XV, XVIII, and XXI improperly seek *nunc pro tunc* relief by attempting to retroactively treat pre-petition transfers made by non-debtor entities as property of the bankruptcy estate is well-taken.  Such relief refers

to the court's power to enter an order with retroactive effect, a remedy reserved only for rare cases and used to correct the record but not to alter the parties' substantive rights. *In re Buckskin Realty, Inc.*, 525 B.R. 4, 8 (E.D.N.Y. Bankr. Jan. 6, 2015) (internal citations omitted).  The Defendants contend that such relief is impermissible because it would effectively alter the historical status of the entities' assets without first adjudicating the substantive consolidation or alter ego claims raised in Counts I through III.

The Defendants' argument that seeking *nunc pro tunc* relief is premature is itself premature under Rule 12(b)(6), as it asks the Court to evaluate the merits of Counts I through III.  A plaintiff may plead alter ego or equitable ownership and simultaneously plead fraudulent transfer claims targeting transfers made by entities alleged to be a debtor's alter ego. *See Kwok v. Meta Platforms, Inc. (In re Kwok)*, 2025 Bankr. LEXIS 1802, 2025 WL 2167577, at *12 (Bankr. D. Conn. July 29, 2025).  The mere coexistence and interrelated nature of the pleadings do not subject them to dismissal at this stage.

Similarly, the Defendants seek dismissal of Counts X, XI, XIV, XV, XVIII, XX, and XXI on the basis that they assume judgment in favor of the Trustee on Counts I through III. Because this would similarly require the Court to evaluate the merits of Counts I through III, the Court also denies this request. For these reasons, the Motion was denied as it pertains to these arguments against Counts X, XI, XII, XIV, XV, XVIII, XX, and XXI.

IV.    Dismissal for "lumping" multiple defendants

The Defendants argue that by "lumping" multiple Defendants together and failing to delineate each party's role or specific transfers between the parties, the pleadings under Count X are insufficient.  Though the pleadings contain deficiencies that warrant

further clarification and particularization, the Trustee is not prohibited from pleading the joint defendants are the initial transferees in fraudulent transfer claims so long as sufficient detail is provided as to inform each defendant of its alleged involvement. *See Despins v. Agora Lab, Inc. (In re Ho Wan Kwok)*, 2025 WL 699666, 2025 Bankr. LEXIS 510, at 64 (D. Conn. Bankr. Mar. 4, 2025).

The Court agrees that Count X does not meet this standard. The complaint refers broadly to "transfers" but does not indicate specific dates, transfer amounts, or adequately differentiate between the parties.  This amounts to the type of "vague allegations about the defendants as a unit" that are inadequate to satisfy the pleading requirements under Fed.R.Civ.P. 9(b) and therefore as it pertains to this argument against Count X, the Motion was granted with leave to amend.

V.      Substantive Consolidation

The Defendants also argue the complaint lacks specific factual assertions to meet the necessary burden of proof for substantive consolidation.  The Court agrees. Count IX seeks a declaratory judgment substantively consolidating all Defendants to hold them jointly liable for claims against the Debtor, pled as an alternative to the veil-piercing and alter ego theories.  While the complaint alleges the Defendants made various transfers for "no consideration," it does not connect those transfers to a factual showing of pervasive entanglement necessitating substantive consolidation.  Nor does it allege facts indicating that creditors treated the entities as a single economic unit in extending credit or other conduct suggesting a reliance on a unified enterprise.  *See In re Mina*, 2022 Bankr. LEXIS 1887 at *8-*9 (finding the Trustee had adequately pled a cause of action for substantive consolidation by stating that one of the Debtor's

companies had reduced a debt it was owed in exchange for forgiveness of past-due rent owed by two separate companies also solely owned by the Debtor).  Absent such allegations, the complaint does not plausibly state a claim for substantive consolidation under either prong as presently pled, and the Motion was granted as it pertains to this argument against Count IX with leave to amend.

VI.   Conn. Gen. Stat. § 33-673c

The Defendants seek dismissal of Counts III through VI for lack of colorable basis, arguing that that the Trust, Martone Group, and Martone Building are Connecticut domestic entities, meaning, pursuant to Conn. Gen. Stat § 33-673c, they cannot be held liable "for a debt, obligation or other liability of an interest holder of such entity based upon a reverse veil piercing doctrine."

Reverse veil piercing allows a third-party to hold a corporation liable for the debts of an individual shareholder.  *In re Woldeyohannes*, 665 B.R. 543, 568 (Bankr. D. Conn. 2024).  The Motion's contention rests on factual predicates, including the organizational status, governance, ownership, and operational activities of the entities that cannot be resolved on a motion to dismiss.  Whether Conn. Gen. Stat. § 33-673c bars the Trustee's claims presents a mixed question of law and fact that is not suited for resolution at this stage.  The Motion was denied as it pertains to these arguments against Counts III through VI on this basis.

Conclusion

The Court entered its Order at AP-ECF No. 25, which is amended here.   All other contentions by the parties were considered and found to be without merit.

Pursuant to the Scheduling Order entered as AP-ECF No. 29, the deadline for the plaintiff to file an amended complaint is May 22, 2026, the deadline for the defendants to file a response to an amended complaint is June 12, 2026, and a continued Pre-Trial Conference will be held on June 23, 2026, at 2:00 p.m.

Dated this 30th day of April, 2026, at New Haven, Connecticut.

Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut